IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RACHEL V.,[1] | ) |
| Plaintiff, | ) ) ) |
| | ) No. 22 C 3534 |
| v. | ) ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) Maria Valdez ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Rachel V.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 10] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 14] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

# BACKGROUND

## I. PROCEDURAL HISTORY

On October 5, 2020, Plaintiff filed a claim for DIB, alleging disability since February 10, 2020. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on August 3, 2021, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On January 14, 2022, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 10, 2020. At step two, the ALJ concluded that Plaintiff has severe impairments of small fiber neuropathy and fibromyalgia. The ALJ concluded at step three that Plaintiff's

impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: can never climb ladders, ropes, or scaffolds; can occasionally climb ramps/stairs, stoop, crouch, kneel, and crawl; can use upper extremities/hands no more than frequently to reach in all directions, handle, finger, and feel; can use upper extremities no more than frequently to push/pull; must be provided a sit-stand option allowing standing for 1-2 minutes after sitting for 30 minutes; and should avoid concentrated exposure to extreme cold and heat. At step four, the ALJ concluded that Plaintiff would be unable to perform any past relevant work. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is

disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v.*

4

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

      However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate

5

the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ failed to factor in the effects of Plaintiff's fibromyalgia and related symptoms on her RFC; (2) the ALJ failed to consider the effects of Plaintiff's mental impairments in combination with her physical impairments; (3) the ALJ's finding that Plaintiff's statements are inconsistent with the record is unsupported by substantial evidence; and (4) the ALJ failed to support her rejection of the source statement from Plaintiff's treating neurologist. Each argument will be addressed below in turn.

A. <u>**The ALJ's Assessment of Plaintiff's Fibromyalgia**</u>

For her first argument, Plaintiff contends that, though the ALJ specifically analyzed her fibromyalgia at step three, the ALJ "appeared to simply ignore Plaintiff's severe fibromyalgia in the remainder of her decision." (Pl.'s Mot. At 8.) Along those lines, Plaintiff asserts that the ALJ failed to "properly evaluate Plaintiff's chronic, severe pain and other subjective symptoms." (*Id.*) The Court agrees with Plaintiff that the ALJ's step three analysis of fibromyalgia is not the model of clarity, but it is nonetheless clear that the ALJ was determining at that step that Plaintiff's fibromyalgia does not rise to listing-level severity. And, in any event, the Court agrees with Defendant that "[t]he ALJ considered fibromyalgia symptoms throughout her assessment of plaintiff's residual functional capacity, as is evident from even a cursory reading of the decision." (Def.'s Memo. at 2-3.) The Court need not recite the ALJ's detailed analyses of Plaintiff's fibromyalgia-related symptoms, though that topic will be further addressed below with respect to Plaintiff's third argument.

B. <u>**The ALJ's Assessment of Plaintiff's Mental Impairments**</u>

For her second argument, Plaintiff contends that "the ALJ neglected to consider the effects of [Plaintiff's mental] impairments[] in combination with Plaintiff's physical impairments." (Pl.'s Mot. at 9.) Pertinent to that argument, in determining that Plaintiff's alleged mental limitations are nonsevere, the ALJ reasoned as follows:

> The claimant's medically determinable mental impairments of anxiety disorder and depressive/mood disorder, considered singly and in

7

>combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. The claimant has not had treatment for mental impairments. The claimant reported feeling depressed and having some anxiety about summer since heat makes symptoms worse. However, no signs or symptoms of a mental disorder that imposed more than mild work-related limitation(s) were observed.

(R. 16 (citation omitted).) The ALJ then considered the "paragraph B" criteria and set forth a thoroughly detailed analysis of each functional area, finding that Plaintiff had no limitation in understanding, remembering, or applying information and interacting with others and a mild limitation in concentrating persisting, or maintaining pace and adapting and managing oneself. (*Id.* at 16-18.)

The Court finds no error with respect to the ALJ's analysis of Plaintiff's alleged mental limitations. Along those lines, the Court agrees with Defendant that "[t]he ALJ reasonably determined that plaintiff had the ability to work with no mental restrictions, citing ample evidence of plaintiff's enduring mental capacity." (Def.'s Memo. at 5.) Plaintiff herself concedes that she "may indeed not exhibit significant mental abnormalities attributable solely to her mental impairments." (Pl.'s Mot. at 9.) In keeping with that concession, the Court finds that Plaintiff has not demonstrated that her mild mental limitations coupled with her physical impairments required corresponding restrictions in the RFC. Further, the Court concludes that Plaintiff's argument that the ALJ did not sufficiently consider her impairments together in combination fails as it amounts to an impermissible request that the evidence be re-weighed. *See Cindy P. v. Kijakazi*, No. 20 C 6708, 2022 WL 2802328, at *4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees

8

with Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence.").

### C. The ALJ's Evaluation of Plaintiff's Statements

For her third argument, Plaintiff contends that "[t]he ALJ failed to support her finding that Plaintiff's statements are inconsistent with the record." (Pl.'s Mot. at 12.) Plaintiff's argument in that regard is an attack on the ALJ's credibility determination and symptom assessment. With respect to an ALJ's evaluation of a claimant's symptoms, this Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). In this case, the Court finds that Plaintiff has not shown that the ALJ's evaluation of her statements was patently wrong.

Plaintiff's assertion concerning the ALJ's symptom analysis is somewhat puzzling in light of the fact that the ALJ largely *credited* and *accommodated* Plaintiff's subjective complaints. Indeed, specifically to account for Plaintiff's alleged hand and foot pain, the ALJ limited Plaintiff to sedentary exertion and "provided additional postural and environmental limitations . . . to accommodate her pain complaints." (R. 20.) The ALJ also specifically accommodated Plaintiff's alleged difficulties standing by limiting Plaintiff "to sedentary work so she does not have to stand prolonged periods." (*Id.*) Further, the ALJ specifically accommodated

9

Plaintiff's alleged difficulties reaching overhead by "limiting reaching to no more than frequently rather than constantly." (*Id.*) Additionally, given Plaintiff claim "that heat and cold can make her light headed," the ALJ determined that Plaintiff should "avoid concentrated exposure to extreme heat and extreme cold." (*Id.*) Given the ALJ's explicit analyses and accommodations in that regard, the Court finds no reversible error in the ALJ's evaluation of Plaintiff's reported symptoms. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either.").[2]

### D. The ALJ's Evaluation of Dr. Subhash Patel's Opinions

Finally, Plaintiff argues that the ALJ improperly discounted the opinions of her treating neurologist, Dr. Subhash Patel. Because Plaintiff filed her claim in 2020, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate

---

[2] Plaintiff specifically takes issue with the ALJ's treatment of her alleged need to nap during the day. In her decision, the ALJ reasoned that though Plaintiff "testified to having headaches daily with pain of 9/10 in severity and treated with taking medicine and lying down in [the] dark, such frequency of headaches or severity is not documented in the record." (R. 16.) The ALJ further reasoned that though Plaintiff "said that she naps, there is no evidence that such is a medical necessity seen in treatment notes." (*Id.* at 20.) The Court finds no error in the ALJ's determination that Plaintiff's alleged napping requirements were not borne out by the record.

10

"how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

In her decision, the ALJ assessed Dr. Patel's opinions as follows:

> Dr. Patel completed a medical source statement entitled Peripheral Neuropathy RFC in which he opined that the claimant's anxiety, chronic low back pain and positive RF resulted in her being limited to less than sedentary work. The opinion is not persuasive as it did not refer to specific treatment notes to support the restrictions including the need for unscheduled breaks occurring more than 5 times an hour that can last 50-75 minutes (which suggests she is always on break). Further, such severity of limitations in the hand/upper extremities as opined by Dr. Patel are inconsistent [with] the claimant ability to use her hands, arms and fingers to drive, prepare food, shop, do laundry, wash dishes, feed/walk a dog, go on to internet, [and] use email. Also the claimant testified she texts occasionally and accesses Facebook with a cell phone daily which requires she use her hands and fingers to text and type. Even more, the treatment notes and exams . . . do not show limitations in strength, range of motion or sensation. Dr. Patel also did not refer to specific treatment notes or events to support his opinions regarding off

11

task time, reduced concentration or attention or absences from work nor problems with or difficulty with stress except that claimant report[ed] such limitations. Dr. Patel's opinion is not persuasive as it is not consistent with treatment notes showing 5/5 strength and good functional ability.

(R. 23-24 (citations omitted).)

So, in sum, the ALJ discounted Dr. Patel's opinions because they were extreme, not supported by treatment notes, inconsistent with Plaintiff's demonstrated abilities, and inconsistent with Plaintiff's examinations. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Patel's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The Court declines Plaintiff's general invitation to reweigh the evidence in relation to Dr. Patel's opinions, an endeavor the Court cannot undertake. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No. 10] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 14] is granted.

**SO ORDERED.**           **ENTERED:**

*[signature: Maria Valdez]*

**DATE:**    **April 28, 2023**        _____
                                            **HON. MARIA VALDEZ**
                                            **United States Magistrate Judge**